FERRY *v*. STATE OF INDIANA.

[No. 869S191.  Filed October 5, 1970.  No petition for rehearing filed.]

*Robert R. Riggle,* of Jeffersonville, for appellant.

*Theodore L. Sendak,* Attorney General, *David S. Wedding,* Deputy Attorney General, for appellee.

HUNTER, C.J.—This is an appeal brought by the appellant, William Bernard Ferry, from a conviction in the Clark Circuit Court of the crimes of possession of narcotic drugs and possession of narcotic drugs with intent to sell.  Said offenses are found at Ind. Ann. Stat. § 10-3538 (1969 Cum. Supp.).

Trial was had before a jury and upon a finding of guilty as charged, appellant was sentenced to the Indiana State Prison for not less than two (2) nor more than ten (10) years for possession, and for not less than five (5) nor more than twenty (20) years for possession with intent to sell the drugs in question. A timely motion for new trial was filed by appellant alleging numerous grounds as error in support thereof. Said motion was overruled by the trial court and it is from the overruling of his motion that appellant brings this appeal.

Appellant alleged the following specifications of error in his motion for new trial:

"(1) That the verdict of the jury is contrary to law.

(2) That the verdict of the jury is not sustained by sufficient evidence.

(3) That the court erred in overruling the Defendant's (appellant's) motion for a directed verdict.

(4) That the court erred in overruling the Defendant's motion for suppression or (sic) evidence that was made at the trial."

In his brief before this court, appellant is arguing specifications (1)-(3) of his motion for new trial and in doing so has grouped and supported them in one argument. Since the question raised by each specification is substantially the same, this opinion will deal with appellant's argument accordingly. Essentially the issue before us involves the following question: Was there probable cause to support the issuance of the search warrant obtained by the police in this case? The resolution of this question is critical to appellant's appeal since all of the incriminating evidence introduced at trial was discovered pursuant to a contested search warrant. Unless probable cause existed, the search warrant would be invalid and the evidence obtained thereunder should have been excluded as demanded by appellant in his motion to suppress.

The evidence most favorable to the State reveals the follow-

ing events: on November 1, 1968, six police officers went to #19 Yorkshire Apartments at 725 Eastern Boulevard, in Clarksville, Indiana, to conduct a search of the premises pursuant to a warrant issued for that purpose earlier that day. The apartment was occupied by appellant and his wife. The officers upon their arrival at the address knocked on the door and identified themselves. They heard a voice tell them to wait a minute and they did so for approximately 30 to 40 seconds. The officers then decided to wait no longer and commenced to enter the apartment. They were slowed in their progress by appellant's wife, Mrs. Ferry, who was pushing on the door attempting to keep the officers out.

Two of the officers had positioned themselves at the rear of appellant's apartment during the above-described events. When the other officers knocked on the front door of the apartment and identified themselves, the appellant, according to one of the officers in the rear, threw the window blind back, raised the window, opened the screen and laid a shaving case out on the ground. The officer retrieved the case and entered the apartment where the other officers were conducting their search. At the time the first group of police officers made their entrance into the apartment, they observed appellant running toward the bathroom. They pursued him and immediately placed him under arrest.

Among the items discovered during the search of the appellant's apartment were:

(1) a spoon with white powder found in the bathroom and later analyzed to contain cocaine.
(2) a needle and syringe found in the bedroom.
(3) a syringe found behind the couch in the living room.
(4) two syringes found on the kitchen window sill.
(5) a needle, syringe, and a 20 cc. valve found in a dresser drawer.
(6) the shaving case which appellant placed outside his window was found to contain 157 small folded tin foil squares containing powder, and numerous bottles filled with pills. A subsequent laboratory analysis revealed

that the tin foil packets contained cocaine, and the bottles contained cocaine, morphine [a derivative of opium], dilaudid, dolophine, and opium alkoloid, believed to be pantopon.

Officer Robert Gutman, a veteran of the Louisville, Kentucky Police Narcotics Squad, testified that the cocaine contents of the shaving case, if all "bagged" for sale would be worth $2-3,000 in the market. He stated that typical "bagging" is done in small amounts of powder in small tin foil squares. He further testified that this was exactly the way the packets were wrapped in appellant's shaving case and that in his experience as a narcotic's officer this was the only way he had ever seen cocaine flakes packaged for sale. It was his opinion that the packets in appellant's case were packaged for sale.

The affidavit for search warrant leading to the above search was signed by Officer Ronald M. Kemp of the Clarksville Police Department in accordance with the *then* applicable terms of Ind. Ann. Stat. § 9-602 (1956 Repl.). It reads as follows:

## "AFFIDAVIT FOR SEARCH WARRANT

State of Indiana ⎱
County of Calrk ⎰ ss:

Ronald M. Kemp, being duly sworn, swears that he has reason to believe and does believe that there are certain narcotic drugs, to-wit: Morphine and codeine, located and concealed in a certain apartment, to-wit: Yorkshire Apartments, apartment 19, 725 Eastern Blvd., Clarksville, Clark County, Indiana, and that said narcotic drugs are unlawfully possessed and used in violation of the laws of the State of Indiana and that the reasons and grounds of affiant's belief that there is probable cause for searching said apartment [sic] are as follows:

That said affiant has information from Sgt. Robert Gutman, Narcotics Bureau, Louisville Police Department, that Bill Ferry and Melvin Haysley were positively identified in Clinton, Iowa, in a drug store in said city and state prior to the time that said drug store was burglarized, (sic) that Bill Ferry was positively identified as being an occupant of a motel in said city and state, that a call was made from

Clinton, Iowa, to Bill Ferry's residence at the Yorkshire Apartments, Clarksville, Indiana, that the said Bill Ferry and Melvin Haysley are known users and sellers of narcotic drugs by the Louisville Police Department, that the aforementioned drug store was burglarized (sic) in said Clinton, Iowa, and certain narcotic and dangerous drugs, to-wit: Morphine and Codeine were stolen from said drug store, and that affiant reasonably believes that the said Bill Ferry flew from Clinton, Iowa, to Louisville, Kentucky on the 31st day of October, 1968, that the said Bill Ferry has with him the said narcotic and dangerous drugs, to-wit: Morphine and Codeine at his place of abode aforementioned.

/s/ Ronald M. Kemp
Ronald M. Kemp

Subscribed and sworn to before me this 1st day of November, 1968.

/s/ Michael P. Marra
Justice of the Peace"

Although Officer Kemp appeared before the justice of the peace and gave oral testimony, the record indicates that no information was offered in testimony beyond that already contained in the affidavit. Probable cause therefore was established on the basis of this information and it is appellant's contention that it was based wholly on hearsay. That being so, according to appellant, under Indiana law in existence at that time the affidavit is legally insfficient to support the issuance of the search warrant here challenged.

The leading case in Indiana with regard to the requirements of probable cause for a search warrant in *Rohlfing* v. *State* (1949), 227 Ind. 619, 88 N. E. 2d 148. This court there held that:

"The search warrant in this case was not sufficient to show probable cause for the reason that the material part of the affidavit showing probable cause was based on hearsay. The judicial determination of probable cause as required herein must be based on facts and not hearsay." 88 N. E. 2d at 150.

The holding in *Rohlfing* has been recently reaffirmed in a unanimous decision by this court in *McCurry* v. *State* (1967), 249 Ind. 191, 231 N. E. 2d 227 as follows:

"The doctrines with reference to hearsay as set out in *Rohlfing* v. *State, supra,* still remains the law in Indiana . . . We grant that the doctrine that hearsay will not support the issuance of a search warrant (as stated in *Rohlfing* v. *State, supra*) is not the rule as announced by the United States Supreme Court. *Jones* v. *United States* (1960), 362 U. S. 257, 80 S. Ct. 725, 4 L. Ed. 2d 697." 231 N. E. 2d at 229.

The position of the U. S. Supreme Court regarding hearsay as a basis for a finding of probable cause is best summarized by Mr. Justice Goldberg in the case of *Aguilar* v. *State of Texas* (1964), 378 U. S. 108, 12 L. Ed. 2d 723:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, *Jones* v. *United States,* 362 U. S. 257, 80 S. Ct. 725, 4 L. Ed. 2d 697, [78 A. L. R. 2d 233] the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see *Rugendorf* v. *United States,* 376 U. S. 528, 84 S. Ct. 825, 11 L. Ed. 2d 887, was 'credible' or his information 'reliable'. Otherwise, 'the inferences from the facts which lead to the complaint' will be drawn not 'by a neutral and detached magistrate', as the Constitution requires, but instead, by a police officer 'engaged in the often competitive enterprise of ferreting out crime', *Giordenello* v. *United States, supra,* 357 U. S. at 486, [78 S. Ct. at 1250], 2 L. Ed. 2d at 1509; *Johnson* v. *United States, supra,* 333 U. S. at 14, [68 S. Ct. at 369], 92 L. Ed. at 440, or, as in this case, by an unidentified informant." 378 U. S. at 115, 12 L. Ed. 2d at 729.

It is apparent from a comparison of the holdings in *Rohlfing,* and *Aguilar* that at the time in question Indiana had a stricter probable cause requirement with respect to the affidavit upon which the issuance of a search warrant is based. The U. S. Supreme Court has authorized the use of hearsay information in the affidavit provided that the magistrate is informed of some of the underlying circumstances supporting its credibility and reliability. In Indiana the use of hearsay was not authorized.

The rule in this regard was recently changed however, by the Indiana General Assembly. Ind. Ann. Stat. § 9-602, *supra,* was amended in March of 1969 to include the following language:

". . . and that the affiant believes and has good cause to believe that such things as are to be searched for are there concealed, or that the person to be arrested committed said offense, and setting forth the facts then in knowledge of the affiant or information based on credible hearsay, constituting the probable cause. When based on credible hearsay, the affidavit shall contain reliable information supplied to the affiant by a credible person, named or unnamed, and it shall contain the following:

(a) Affirmative allegations that the credible person spoke with personal knowledge of the matters contained therein.

(b) The facts within the personal knowledge of the credible person.

(c) The facts within the affiant's knowledge as to the credible person."

Although the search warrant in this case must be tested in accordance with the law as it existed at the time it was issued, we believe that it is defective even if the aforementioned amendment were applicable.

In the case at bar it is clear from both the affidavit and the testimony of the affiant, Officer Kemp, that the information which resulted in a finding of probable cause was wholly based on hearsay. In fact it was based on multiple or "totem-pole" hearsay. At the trial, Officer Kemp was questioned as follows:

"Q. Well, what information had you received sir?
A. We had received information that he had narcotics in his possession.

Q. From whom?
A. Sgt. Robert Gutman.

Q. And where did Sgt. Gutman get his information?
A. From Detective Age.

Q. And where did Detective Age get the information sir?
A. He received his information from a Lieutenant of a police department of Clinton, Iowa.

. . .

Q. All right sir, did you, Officer Kemp, tell while you were under oath, Judge Marra, that there was a Lieutenant in Clinton, Iowa, who told an officer in Louisville, Kentucky, who told a sergeant in Louisville, Kentucky, who told you the information; did you tell him that?

. . .

A. Yes, we did discuss the matter."

The record further reveals that no inquiries were ever made to the Clinton, Iowa police authorities by the Clarksville Police Department to verify the information or the accuracy of its source. There was never any verification of the information contained in the affidavit. Neither the facts within the personal knowledge of the credible person [the Clinton, Iowa officer] nor the affiant's knowledge as to his credibility were specified.

Not only does the affidavit fall short of meeting the standards of *Rohlfing* v. *State, supra,* but it also fails under the more liberal rule enacted by the legislature. The fact ■ that the information contained in the affidavit proved to be correct upon a search of appellant's apartment cannot cure the invalidity of the search warrant as issued. Probable cause for a warrant properly must be established before the search and not as a result of its fruits.

Although we do so reluctantly we are constrained to hold that the eveidence seized as a result of the search warrant, based as it was wholly on hearsay information, was obtained illegally and should have been excluded upon appellant's motion to suppress the same. The failure to do so is reversible error, and the trial court should have granted the motion for new trial.

For the foregoing reasons, the judgment of the trial court should be reversed.

Judgment reversed.

DeBruler and Jackson, JJ., concur. Givan, J., dissents with opinion in which Arterburn, J., concurs.

DISSENTING OPINION

GIVAN, J.—I cannot agree with the majority opinion in this case. The search warrant in this case was obtained upon the affidavit of one Ronald L. Kemp, police officer of Clarksville. In his affidavit Officer Kemp stated that he had received information from Robert Gutman, Narcotics Bureau of the Louisville Police Department, that the appellant and another were positively identified in Clinton, Iowa, as a suspect in a drug store burglary. The information recited in the affidavit, which is set out in full in the majority opinion, would be sufficient official police communication which, if received by any officer while on patrol, would be probable cause for him to arrest a suspect without a warrant. See *Patterson* v. *State* (1970), 253 Ind. 499, 20 Ind. Dec. 290, 255 N. E. 2d 520, *Manson et al.* v. *State* (1967), 249 Ind. 53, 11 Ind. Dec. 293, 229 N. E. 2d 801.

I see no reason why this type of information when received through official police communication channels should not be sufficient for the issuance of a search warrant.

I think the rule recited in the majority opinion is applicable to situations where the information received is from other than official sources and is of doubtful validity. However, to say that police officers of one city cannot obtain a search warrant based upon official police communications from another city is to create a situation which would require bringing witnesses from a distant city to testify before a magistrate before a search warrant could be issued. This would result in an impossible situation. Rapid communication systems would be totally useless for the apprehension of criminals over long distances if such information cannot be relied upon for the obtaining of a search warrant.

The Supreme Court of the United States has stated that

observations of fellow officers engaged in a common investigation are a reliable basis for a warrant applied for by one of their number. *U. S.* v. *Ventresca* (1965), 380 U. S. 102, 111, 13 L. Ed. 2d 684, 85 S. Ct. 741.

The Court of Appeals of New York in citing *Ventresca* observed:

> "The controlling principle seems to be that it is not necessary for the officer making the arrest to know of the reliability of the informer or to be, himself, in possession of information sufficient to constitute probable cause provided that he acts upon the direction of or as a result of communication with a superior or brother officer or another police department provided that the police as a whole were in possession of information sufficient to constitute probable cause to make the arrest. * * *"

*People* v. *Horowitz* (1967), 21 N. Y. 2d 55, 233 N. E. 2d 453, 455.

The Supreme Court of Illinois in facing this same situation has observed:

> " 'There is a great difference between that which is required to prove guilt in a criminal case and probable cause for arrest and search, as well as in the tribunals which determine such matters, and therefore, a like difference in the *quanta* and *modes* of proof required to establish such guilt or probable cause. *Draper* v. *United States,* 358 U. S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327; *Brinegar* v. *United States,* 338 U. S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879. Probable cause for arrest exists where the facts and circumstances within the arresting officer's knowledge and of which he had reasonable and trustworthy information are sufficient in themselves to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested is guilty. * * *' "

*People* v. *Brinn* (1965), 32 Ill. 2d 232, 204 N. E. 2d 724, 730.

I would, therefore, hold that the search warrant was properly issued and therefore the trial court did not err in overruling the motion to suppress the evidence obtained thereby.

I would affirm the lower court.

Arterburn, J., concurs.

NOTE.—Reported in 262 N. E. 2d 523.