

FILED

Oct 14 2015, 9:34 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| John L. Tompkins | Gregory F. Zoeller |
| Brown Tompkins Lory & Mastrian | Attorney General of Indiana |
| Indianapolis, Indiana | |
| | Ellen H. Meilaender |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tonya Herron, | October 14, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 49A04-1504-CR-149 |
| v. | Appeal from the Marion Superior Court |
| State of Indiana, | The Honorable Linda E. Brown, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 49F10-1308-CM-54228 |

**Baker, Judge.**

[1] Tonya Herron appeals the certified interlocutory order of the trial court denying her motion to suppress evidence. She argues that the warrant authorizing a blood draw lacked probable cause where the officer's probable cause affidavit left several material sections blank. Finding a lack of probable cause to issue the warrant, we reverse.

## Facts

[2] On August 16, 2013, Officer Carey stopped Herron's car to investigate whether she was intoxicated.[1] Officer Carey informed Herron of Indiana's implied consent law[2] and asked her whether she would submit to a chemical test to determine her intoxication level. When she declined, Officer Carey filled out a probable cause affidavit for a blood draw.

[3] The boilerplate introduction to the affidavit states that Officer Carey had reason to believe "that there is now concealed certain evidence, namely: Blood in such person, which is evidence of the crime of operating a vehicle/motor vehicle while intoxicated . . . and tends to show that said person committed such offense[.]" Appellant's App. at 8. Based on the "X" he placed on the form, his affidavit goes on to say, "In the course of my duties I had occasion to investigate . . . the scene of an operating a vehicle while intoxicated. Officer Carey observed erratic and/or unlawful motor vehicle operation as follows . . .

---

[1] The exact circumstances of this stop, and what led to it, are not in the record before us and are not being challenged in this appeal.

[2] Ind. Code § 9-30-6-1 *et seq.*

." *Id.* The space underneath this prompt was left blank, and all parties agree it was done so by mistake. Officer Carey also did not write anything under the prompt, "I believe that above-named individual was the operator of the motor vehicle in question because . . . ." *Id.*

[4] His affidavit does mention the following indicia of intoxication: odor of alcoholic beverage on the breath; alcohol beverage containers in plain view; slurred speech; glassy and bloodshot eyes; unsteady balance; and a preliminary breathalyzer test resulting in a .19 reading. *Id.* at 9. Finally, the affidavit states that Herron refused to consent to a certified chemical test after being advised of the implied consent law. *Id.* The judge signed the warrant, and a blood sample was taken.

[5] On August 22, 2013, the State charged Herron with operating a vehicle while intoxicated[3] and operating a vehicle with a blood alcohol concentration of 0.15 or greater[4] as class A misdemeanors. On March 7, 2014, Herron filed a motion to exclude the evidence obtained by the blood draw. After a February 24, 2015, hearing, the trial court denied her motion. Herron now appeals from the trial court's interlocutory order denying her motion to exclude.

---

[3] Ind. Code § 9-30-5-2(a).

[4] I.C. § 9-30-5-1(b).

# Discussion and Decision

When deciding whether to issue a warrant, a magistrate makes a practical, common-sense decision whether, given all the circumstances, there is a fair probability that evidence of a crime will be found. *Lloyd v. State*, 677 N.E.2d 71, 73 (Ind. Ct. App. 1997). When reviewing that decision, we apply a deferential standard, and will affirm if the magistrate had a substantial basis for concluding that probable cause to search existed. *Id.* Probable cause determinations "are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 231 (1983). The determination is made upon the totality of the circumstances. *Id.* at 233.

# I. The Warrant

Herron properly brings one argument on appeal, namely, that the affidavit did not include enough specific facts to support probable cause for a warrant.[5] She argues that since the only mention of a motor vehicle is in the affidavit boilerplate, "the application form does not even contain an individualized allegation that Herron operated a vehicle at all." Appellant's Br. 3.

---

[5] Herron also questions whether "a court may presume a neutral and detached magistrate" where sections of the application were left blank, but she does so for the first time on appeal. Since "a trial court cannot be found to have erred as to an issue or argument that it never had an opportunity to consider," *Washington v. State*, 808 N.E.2d 617, 625 (Ind. 2005), this argument is waived. Moreover, this second argument, as developed in the Appellant's Brief, is essentially a repackaging of the first and so it need not be discussed separately.

[8]     Whether Herron was actually operating a vehicle is crucial to whether there was probable cause that the crime of operating a vehicle while intoxicated was committed. Both Indiana Code sections 9-30-5-1(b) and -2(a) require the State to show that a person "operate[d] a vehicle." Without the allegation that Herron operated a vehicle, it is unclear whether she committed any criminal violation. Officer Carey did allege specific facts of intoxication—odor of alcoholic beverage on the breath; alcohol beverage containers in plain view; slurred speech; glassy and bloodshot eyes; unsteady balance; and a preliminary breathalyzer test resulting in a .19 reading—but these would only support probable cause for Herron's intoxication. In *Milam v. State*, we reversed a public intoxication charge for insufficient evidence where the intoxicated defendant was a passenger, not the operator, of a vehicle. 14 N.E.3d 879 (Ind. Ct. App. 2014); s*ee also* Ind. Code § 7.1-5-1-3. The absence of facts giving the magistrate a substantial basis to believe Herron operated a motor vehicle would render the warrant affidavit insufficient to show probable cause of a crime.

[9]     We note that the mere use of boilerplate language does not call the validity of a warrant into question. In *Rios v. State,* we rejected such a claim, stating that "[t]his alone does not make the affidavit insufficient to establish probable cause." 762 N.E.2d 153, 160 (Ind. Ct. App. 2002). That case involved an affidavit with boilerplate language but "with the facts particular to Rios . . . inserted in bold by a word processing program." *Id.* The use of boilerplate language in a warrant affidavit is valid "as long as the affidavit contains

sufficient facts specific to the search at issue to establish probable cause . . . ." *Id.*

[10] The State offers four arguments as to why the magistrate had a substantial basis to believe Herron was operating a vehicle. First, it argues that the following statement contained in the affidavit creates such a basis: "which is evidence of the crime of operating a vehicle/motor vehicle while intoxicated . . . ." But these words are pure boilerplate. The State would have us go beyond *Rios* to say that boilerplate without facts particular to Herron would still be sufficient to create probable cause. Under this argument, a prefabricated form with this single sentence, a defendant's name at the top, and an officer's signature at the bottom would be sufficient to support a warrant. Such an argument is unavailing.

[11] Second, the State points to more boilerplate on the form: "In the course of my duties, I had occasion to investigate . . . the scene of an operating a vehicle while intoxicated." This argument fails for the same reason as the first: this language is pure boilerplate without any facts specific to the search at issue. To find that such a statement creates a substantial basis to believe that Herron was operating a vehicle would be to turn magistrates into the kind of "rubber stamp" they cannot and should not be. *U.S. v. Leon*, 468 U.S. 897, 914 (1984).

[12] Third, the State argues that the affidavit does contain facts specific to Herron because Officer Carey filled out the date, time, and intersection of where he saw Herron. "[I]mplicit in these facts is an allegation that a vehicle was operated."

Appellee's Br. 7. When combined with the above-mentioned boilerplate, "these statements create a clear inference that Defendant is the person who was allegedly operating the vehicle stopped at Southport and McFarland on August 16th." *Id.* at 8.

[13] This argument fails because the State is misapplying the "substantial basis" rule. Our standard of review is not whether the magistrate had a substantial basis to understand what crime an officer is alleging; it is instead whether the magistrate had a substantial basis to believe that probable cause of a crime and evidence thereof existed. Put pithily, if an officer's affidavit stated solely that an individual "committed a crime that rhymes with schmurder," a magistrate would have a substantial basis to believe the officer was talking about murder, but would not have a substantial basis to believe that probable cause existed regarding a murder. *See Kinnaird v. State*, 242 N.E.2d 500, 505 (Ind. 1968) (holding warrant invalid where "affidavit merely allege[d] that the appellant engaged in unlawful conduct [but did not] state the facts and circumstances from which this conclusion was drawn"). Reading the affidavit in this case, a magistrate would clearly have a substantial basis to believe that Officer Carey meant to allege that Herron operated a vehicle while intoxicated, but would not have a substantial basis to find probable cause that Herron actually did commit that offense.

[14] Fourth, the State argues that when Officer Carey placed an "X" next to the statement, "The above named individual has refused to consent to a certified chemical test after being advised of the Indiana Implied Consent Law," he

provided enough information to satisfy the substantial basis for probable cause standard. The State reasons as follows: the Implied Consent Law, Indiana Code section 9-30-6, only applies to drivers; courts should presume that officers know Indiana laws; therefore, courts should presume that Officer Carey would only read the law to someone operating a vehicle; and therefore, there was probable cause to believe Herron was operating the vehicle.

[15] This argument fails. This is precisely the type of "legal technician" argument warned against in *Gates*. Although we do presume that officers know and follow the law, nothing in Indiana Code section 9-30-6 *et seq.* forbids an officer from offering a chemical test for intoxication to a passenger or a pedestrian. We cannot agree that an officer reading a law to an individual creates probable cause to believe that individual violated a law.

[16] In summary, when one focuses on the individualized information contained in the affidavit, rather than the boilerplate, one finds the following: at 9:04 p.m. on August 16, 2013, at the intersection of Southport Road and McFarland Boulevard, Officer Carey noticed that Herron exhibited signs of intoxication, so he read to her Indiana's Implied Consent Law but she refused to consent to a chemical test. This combination of facts does not create probable cause that a crime was committed, and therefore the warrant was invalid.

## II. Good Faith Exception

[17] Our analysis does not end with finding the warrant invalid. Under some circumstances, an officer's "reliance on the magistrate's determination of

probable cause [is] objectively reasonable, and application of the extreme sanction of exclusion is inappropriate." *Leon,* 468 U.S. at 926. The exception allows courts to admit evidence that has been unlawfully seized if the police acted in "objective good faith." *Caudle v. State*, 749 N.E.2d 616, 621 (Ind. Ct. App. 2001) (quoting *Leon*, 468 U.S. at 920). An officer does not qualify for this exception if 1) the officer misled the magistrate by filing an affidavit that the officer knew or should have known was false; or 2) if the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *Id.* Our Supreme Court has counselled against allowing the good faith exception to "obliterate the exclusionary rule." *Dolliver v. State*, 598 N.E.2d 525, 529 (Ind. 1992). In a good faith exception case, "[t]he error . . . rests with the issuing magistrate, not the police officer, and punish[ing] the errors of judges is not the office of the exclusionary rule." *Davis v. U.S.*, 131 S. Ct. 2419, 2428 (2011) (internal quotations omitted).

[18] We do not have such a case here; the error rests first with the officer. Both parties agree that Officer Carey did not intentionally mislead the magistrate by filing an affidavit he knew to be false, but, as explained above, the affidavit did lack in indicia of probable cause. Indeed, the individualized information regarding Herron only suggested intoxication, but not any crime.

[19] The definition of "evidence obtained in good faith," for the purposes of this exception, has been codified in Indiana Code section 35-37-4-5(b)(1)(A): evidence "obtained pursuant to a search warrant that was properly issued upon a determination of probable cause by a neutral and detached magistrate, that is

free from obvious defects other than nondeliberate errors made in its preparation, and that was reasonably believe by the law enforcement officer to be valid . . . ." As made clear from the discussion above, this warrant does not fall under the protection of this statute because the search warrant was not "properly issued upon a determination of probable cause."

[20] In sum, the good faith exception does not apply to this error. The error was made first by the officer and so the public policy of incentivizing better police behavior still applies. Affirming a form affidavit that does not, in its individualized portions, include a crime would come much too close to the obliteration of the exclusionary rule that our Supreme Court has cautioned against.

[21] The judgment of the trial court is reversed.

Bailey, J., and Mathias, J., concur.